UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARIO YBARRA CANTU[1], | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-112 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the McConnell Unit in Beeville, Bee County, Texas. Proceeding *pro se*, petitioner filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on April 22, 2013 (D.E. 1).[2] Petitioner claims that his right to due process was violated in a disciplinary hearing held at the McConnell Unit which resulted in the imposition of punishment. Respondent filed a motion for summary judgment on October 21, 2013 (D.E. 11). Petitioner filed a cross-motion for summary judgment on November 14, 2013 (D.E. 13). As discussed more fully below, it is respectfully recommended that Respondent's motion for summary

---

[1] The documents submitted in this case, including documents submitted by Petitioner, reflect that Petitioner's true name is Mario Ybarra Cantu. The Clerk shall amend the docket sheet to reflect the Petitioner's true name. William Stephens is now the Director of the Texas Department of Criminal Justice, Correctional Institutions Division, and the Clerk shall substitute Mr. Stephens as the correct Respondent.

[2] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on April 22, 2013 and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998).

judgment be granted, Petitioner's motion for summary judgment be denied and Petitioner's habeas corpus petition be denied. It is further recommended that any request for a Certificate of Appealability be denied.

## JURISDICTION

Jurisdiction and venue are proper in this court because Petitioner is incarcerated in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Petitioner currently is serving a ten-year sentence for manslaughter (Mot. for Sum. Jmt., Ex. A; D.E. 11-1 at 2). He does not complain about his holding conviction, but challenges the results of a disciplinary hearing. In disciplinary case number 20130034656, Petitioner was accused and found guilty of possessing a weapon intended to be used to injure another person, described as a six and one-half inch homemade knife sharpened at one end with a cloth handle (Disp. Hrg. Recs. at 1; D.E. 12-1 at 3).

In the offense report, the charging officer wrote that on October 3, 2012, while conducting a bunk search, he found the knife in a set of clothing under Petitioner's bunk (Disp. Hrg. Recs. at 2; D.E. 12-1 at 4). During the investigation of the offense, Petitioner argued that it was not his weapon and he knew nothing about it (Disp. Hrg. Recs. at 7; D.E. 12-1 at 9). At the hearing held on October 10, 2012, Petitioner submitted a statement saying that the weapon was not his and that when he was removed from the dormitory after he was charged with having the weapon, approximately forty dollars worth of commissary products was stolen from his belongings (Disp. Hrg. Recs. at 9;

D.E. 12-1 at 11). The charging officer testified by phone that he found the knife in a pair of pants under Petitioner's mattress (Disp. Hrg. Recs. at 10, 12; D.E. 12-1 at 12, 14).

Petitioner was found guilty based on the charging officer's report and testimony. He was punished with fifteen days in solitary confinement and the loss of forty-five days of commissary and recreation privileges. In addition, he was prohibited from having contact visits until December 1, 2012 and his line class was downgraded from L1 to L3 (Disp. Hrg. Recs. at 1; D.E. 12-1 at 4). Petitioner did not lose any good time.

Petitioner filed a Step 1 grievance on October 12, 2012 in which he denied that the homemade knife belonged to him and asserted that someone planted the knife in his bunk. He claimed that whoever planted the knife did so knowing that when it was discovered, Petitioner would be moved and his absence would provide an opportunity to steal his commissary items. Petitioner received a response on November 7, 2012, telling him that there was substantial evidence to warrant the charge and no reason existed to overturn the guilty finding (Disp. Grv. Recs. at 1-2; D.E. 12-2 at 3-4).

Petitioner filed a Step 2 grievance on December 10, 2012, in which he reiterated his argument that the knife did not belong to him. He also asserted that he was up for parole and would not have jeopardized his parole eligibility by possessing a weapon. He received a response on January 23, 2013, telling him that the disciplinary charge was appropriate for the offense and the guilty verdict was supported by a preponderance of the evidence (Disp. Grv. Recs. at 3-4; D.E. 12-2 at 5-6).

Petitioner argues in his habeas petition that the rule regarding possession of a weapon is void for vagueness because it does not define possession and fails to define

"instrument" or set out guidelines for officials to enforce the rule. In Respondent's motion for summary judgment, he contends that Petitioner's claim is unexhausted and otherwise fails to state a claim. In Petitioner's motion for summary judgment he argues that he exhausted his administrative remedies and his due process rights were violated because the weapon rule is vague.

## APPLICABLE LAW

### A. Exhaustion and Procedural Bar

Respondent argues that Petitioner did not properly exhaust all of his claims at the administrative level and because it is now too late for him to do so, the unexhausted claims are procedurally barred. Before a federal court can grant an application for writ of habeas corpus, an applicant must have exhausted the remedies available in the courts of the state. 28 U.S.C. § 2254(b)(1). "To exhaust available state remedies, a habeas petitioner must fairly apprise the highest court of his state of the federal rights which were allegedly violated." *Shute v. State of Texas*, 117 F.3d 233, 237 (5th Cir. 1997)(internal quotations omitted). But, because Texas state courts do not review claims of lost good time or other results of prison disciplinary proceedings, a petitioner is required to pursue his claims through the administrative appeals process rather than state court. *Ex Parte Palomo*, 759 S.W.2d 671, 674 (Tex. Crim.App. 1988); *Ex parte Brager*, 704 S.W.2d 46 (Tex. Crim. App. 1985). The exhaustion requirement is mandatory and the administrative grievance procedure must be completed before a prisoner can file a law suit in federal court. *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998).

In addition, a federal court is barred from reviewing a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). In order to overcome the procedural bar, a petitioner must show either cause and prejudice for the error, or that failure to hear the claims would result in a miscarriage of justice. *Sawyer v. Whitley*, 505 U.S. 333, 338-339 (1992). In order to show a "miscarriage of justice," the petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

The Fifth Circuit has not addressed the applicability of the procedural bar to habeas claims involving prison disciplinary cases. However, the Seventh Circuit has held that the final reviewing authority in the prison grievance process is the administrative equivalent to the state's highest court and that habeas claims based on disciplinary cases could be procedurally defaulted in the absence of cause and prejudice. *Moffat v. Broyles*, 288 F.3d 978, 981-982 (7th Cir. 2002). At least one Texas district court has adopted the reasoning in a published opinion. *Moffatt v. Director*, 390 F.Supp.2d 560, 562-563 (E.D. Tex. 2005). In the absence of authority to the contrary, the reasoning of those cases will be applied here.

Respondent in this case argues that petitioner did not exhaust his administrative remedies in regard to his claim because in neither his Step 1 nor his Step 2 grievance did he argue that the weapon rule violated his due process rights because it is too vague. A review of the disciplinary grievance records show that Respondent is correct. Petitioner

did not raise this claim in either grievance and he cannot do so now because the time period for filing a grievance has passed.³ Accordingly, Petitioner's habeas corpus claim should be dismissed as unexhausted and procedurally barred.

## B. Due Process Rights

In the alternative, the merits of Petitioner's claims will be addressed. *See* 28 U.S.C. § 2254(b)(2)(application for habeas corpus may be denied on the merits, notwithstanding failure to exhaust state court remedies). In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. In *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995), the U.S. Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [*Wolff v. McDonnell*, 418 U.S. 539, 94 (1974)] and [*Meachum v. Fano*, 427 U.S. 215 (1976)]. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* (internal citations omitted). The Supreme Court held in *Sandin* that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present

---

³ *See* TDCJ-CID Offender Orientation Handbook, <http://www.tdcj.state.tx.us/publications/pubs_cid_offender_orientation_handbook.html> at 52-54 (last viewed December 31, 2013).

the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486. The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody. *Id.*

To the extent petitioner is complaining about a reduction in line class, he fails to state a basis of relief. Generally, a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and in turn, on the amount of time he is in custody. Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests." *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995)(*citing Meachum v. Fano*, 427 U.S. 215, 229, n. 8 (1976)). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)(citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating).

To the extent Petitioner is arguing that his loss of privileges or placement in solitary confinement for fifteen days resulted in a constitutional violation, his argument is without merit because those disciplinary measures did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life. Accordingly, Petitioner did not suffer the loss of a liberty interest and cannot show the violation of a constitutional right. Summary judgment should be entered for Respondent.

## C.  Vagueness of Rule

Petitioner argues that the TDCJ-CID rule prohibiting possession of a weapon is vague on its face and thus unconstitutional.[4]  A facial challenge for vagueness is appropriate only on an allegation that the law is vague "'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'"  *Ferguson v. Estelle*, 718 F.2d 730, 735 (5th Cir. 1983)(citing *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)).  However, a petitioner is not permitted to challenge a statute for imprecision if his own conduct falls clearly within the core of the proscribed conduct.  *Ferguson*, 718 F.2d at 735 (citing *Kolender v. Lawson*, 461 U.S. 352, 369-370 (1983)).

Rule 6.0 of the Disciplinary Rules and Procedures for Offenders states that possession of a weapon is a Level 1 Offense.  A "weapon" is defined as any instrument that can be used to inflict injury on another person.  TDCJ-CID Disciplinary Rules and Procedures for Offenders at Att. A-2; http://www.tdcj.state.tx.us/publications/index.html, (last viewed January 2, 2014).  Petitioner argues that this definition is vague, because many items could be used to inflict injury on another person.  He continues that the vague language in the rule is responsible for his being found guilty of the rule violation because it allows prison officials to enforce the rule based on their own predilections.

---

[4] It is assumed for purposes of this motion that constitutional concerns regarding vagueness of statutes are relevant in the context of TDCJ-CID inmate conduct rules.

Petitioner also asserts that the notion of "possession" is vague, especially in his case because he was living in a dormitory. "Possession" is defined in the Inmate Orientation Handbook as "having an item on the body of an offender, among his belongings or in his cell or immediate living area, no matter who owns the item."

While it is possible to envision a situation where Rule 6.0 could be vague, in Petitioner's case it was not. The instrument, a homemade knife, clearly was a weapon (Disp. Hrg. Recs. at 4; D.E. 12-1 at 6) and it was found under his mattress. Thus, Petitioner's conduct fell clearly within the proscribed conduct of the rule.

Petitioner's argument that the disciplinary rule should be found void for vagueness is without merit. Accordingly, for this and the other reasons described above, it is recommended that Petitioner's application for habeas corpus relief be denied.

## D.  Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. Daniel*, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In Petitioner's case, it is recommended that his cause of action be dismissed both procedurally and on the merits. If the district court orders that Petitioner's cause of action be dismissed and Petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because reasonable jurists would not find it

debatable that Petitioner's cause of action is unexhausted and procedurally barred and that he did not suffer the loss of a liberty interest following his disciplinary hearing.

## RECOMMENDATION

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (D.E. 11) be GRANTED and Petitioner's motion for summary judgment (D.E. 13) be DENIED. Petitioner's cause of action for habeas corpus relief should be DENIED. It is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 3rd day of January, 2014.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).